**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                    CASE NO.: 1:07cr18-SPM

JOSEPH DANIEL WAHL,

                Defendant.

_____/

## ORDER ON MOTIONS TO SUPPRESS

        **THIS CAUSE** comes before the Court upon the Defendant's two Motions

to Suppress (docs. 172 and 180) and their accompanying memoranda of law

(doc. 173 and 181).  The Government has filed responses in opposition (docs.

178 and 185).  Defendant has also filed a Motion in Limine (docs. 170 and 171)

to which the Government has filed a response (doc. 177).  A hearing on all of

these motions was held on May 28, 2008.

**I.      BACKGROUND**

        On February 13, 2007, Alachua County Deputy Sheriff Kenneth Allen Holt

made a controlled buy from Stephen Crawford, at Crawford's home.  In the home

with Crawford were Bubba Jack Hurley and Brooke Thomson.  Also in the home

were over thirty (30) pounds of marijuana.  Crawford and Hurley were arrested at

that time.  Thomson was not arrested and she immediately began cooperating.

Thomson told Deputy Holt that she had gone to Texas in Defendant's car to pick up 200 pounds of marijuana and that the rest of the marijuana was located in Defendant's home.  Thomson said she had been to Defendant's home earlier in the day and that she could tell the deputies how to get there and where the marijuana was located inside the home.  When the Alachua County deputies realized that Defendant's home was in Keystone Heights in Clay County, they contacted the Sheriff's Office in Clay County.  The Clay County deputies met the Alachua County deputies at a parking lot in Clay County.

The Clay County deputies were Deputies Dews, Redgate, and Vaughan. Also accompanying the deputies was a Green Cove Springs officer named Joseph Buchanan.  When Deputies Dews and Redgate heard Defendant's name and address, they immediately recognized that address as the home of William Wahl, Defendant's father.  They were both familiar with the Wahl family because of prior interactions related to Defendant's sister.   All the police deputies then proceeded to Defendant's house.

By the time the deputies arrived at the house it was approximately half past midnight.  Clay County deputies Dews and Redgate knocked on the door of the home.  Defendant's father, William Wahl (hereinafter "Wahl") answered. Wahl recognized both of the deputies.  Both deputies were in uniform and were wearing their standard-issue firearms, but they did not have them drawn.  They had arrived in marked vehicles.  Wahl invited all of the deputies inside.  Deputy

Dews introduced Wahl to the other deputies who were present.   The other deputies were not in uniform, but they were wearing their badges.  Wahl's wife then came into the room and asked the deputies to have a seat.  Wahl offered the deputies something to drink.  Then Deputy Vaughan took over the conversation.

Vaughan explained to Wahl that they were looking for Wahl's son, the Defendant.  Vaughan explained that Defendant was the subject of a narcotics investigation and the deputies had reason to believe that some of the marijuana was being stored on Wahl's property.  Deputies Dews and Vaughan testified that Wahl was friendly, very nice, and cooperative during the entire conversation. Wahl then told the deputies that all the property was his and that they could search anything that they wanted.  The property included acreage, a house, and two trailers.  Wahl did not give the deputies any limitations about where they could search.  Wahl testified that he did not think he had a choice about whether or not to assist the deputies.

The deputies testified that Wahl told them that Defendant stayed in a trailer on the property.  Specifically, Deputy Redgate testified that Wahl said that Defendant sometimes stayed in the trailer and he sometimes stayed with friends in Gainesville.  All of the deputies testified that when searching rented premises, they know that they must obtain permission from the tenant, not from the landlord.

Vaughn and Dews testified that they heard no threats or promises made to either of the Wahls.  Wahl testified that the deputies told him that it would be best if he cooperated and that they could get a warrant if he did not consent to the search.  Wahl cannot remember exactly what he told the deputies about the frequency of Defendant's visits to the trailer, but he did testify that he did *not* tell the deputies that Defendant paid him rent for sleeping in the trailer.  Wahl said that he gave the deputies consent to search the entire property, without limitation.

When the deputies walked to the trailer, they testified that they saw a burn pit containing fabric softener sheets, marijuana, and large wads of plastic materials that are commonly used for packing and shipping marijuana.  They also testified that there was a strong smell of marijuana emanating from the trailer.  As the deputies approached the trailer, they saw that the door was open and they were able to see inside.  Vaughan and Dews testified that they were able to see a large gun safe in the trailer before they even entered.  When they walked inside, the deputies saw marijuana on the floor of the trailer, on the tables and on some of the chairs.  They also saw a cash counting machine.  Vaughn tried to open the safe, but he realized that it was locked.  Deputies testified that they did not see a bed in the trailer, but they did see a mattress, a sofa, and a television.

Deputy Dews stayed with the parents in their home while the other deputies proceeded to the trailer.  Dews testified that he stayed with the Wahls

4

because they seemed upset and troubled by all of the police activity.  After about 30 minutes, Vaughn returned to the house and asked Mr. Wahl about the combination to the safe.  Mr. Wahl said that he did not know the combination, but said that he could call his son and ask his son for the combination.  Mr. Wahl called Defendant and told Defendant that the police were at the house and they were searching the trailer and that they needed the combination to the safe. Defendant told his father that he was on his way home and that his father shouldn't worry because he (Mr. Wahl) had nothing to do with the investigation.

Defendant arrived at the house approximately 30 minutes after the phone call.  When Defendant exited the car, he was immediately read his Miranda rights.  Defendant was placed in handcuffs but was told that he was not in custody, he was just being handcuffed for officer protection.  Defendant was escorted to the trailer and asked to open the gun safe.  Defendant complied.  The deputies testified that Defendant was calm and cooperative the entire time. Deputy Dews testified that Defendant said that he would cooperate in any way that he could.  Defendant told the deputies that his parents had nothing to do with this investigation.  Defendant was then arrested and taken into custody. Defendant's car remained in the driveway of his parents' home.

On February 20, 2008, Alachua County Detectives Holt and Zingg impounded Defendant's vehicle from Defendant's parents' home in Clay County. Holt testified that he impounded the vehicle because there wasreason to believe

that it had been used to traffic narcotics.  The directive to seize the vehicle came

from Holt's supervising lieutenant.  Holt did not obtain a seizure order before

seizing the car.  After the car was taken to the impound lot, Holt proceeded to do

an inventory search of the vehicle.  During the search, Holt discovered a GPS

navigational system in the car.  Holt testified that this navigation system was

used to navigate Defendant and Crawford's trip to Texas to pick up marijuana

and bring it back to Florida.

After the inventory search, Holt applied to an Alachua County Circuit

Judge for a search warrant to get the information from the GPS system.  The

application was granted and information from the GPS system was seized.  In

the search warrant, Holt did not mention where the car was initially obtained.

Holt testified that he did not include this information because it was unnecessary.

At the time of the warrant application, the car was located in Alachua County, in

the custody of the Alachua County Sheriff's Office.

At the time he seized the car from Clay County, Holt was not working on

any federal task force.  Alachua County Lieutenant Steven Maynard testified that

his deputies did not usually need permission to do investigations in other

jurisdictions because they are usually with someone from state or federal law

enforcement.  He testified that typically, this is the only time that they conduct

investigations in other jurisdictions.

## II.    DISCUSSION

**A.     First Motion to Suppress**

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).  There are, however, certain exceptions.  Consent to search is one of them.  A valid search of a house may be made without a search warrant and without probable cause if the person in control thereof has given consent.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

To effectuate a valid consent, it is not required for an individual giving consent to be advised of the right to withhold consent.  Id. at 231-33.  Nor is it required that consent be an intentional relinquishment of a known right or privilege, as is the case with waiver of some constitutional rights.  Id. at 243-45. What is required is that the consent be voluntary, that is, free from coercion.  Id. at 227-28.  The voluntariness of consent is determined by "analyzing all the circumstances of an individual consent . . . , [and by] careful sifting of the unique facts and circumstances of each case . . . ."  Id. at 233.

Some factors to consider are whether the defendant was free to leave, the existence of coercive police procedure, the extent of the defendant's cooperation or awareness of a right to refuse consent, the ability of the defendant to refuse consent, the extent of the defendant's education and intelligence, and whether the defendant believed that no incriminating evidence would be found.  United

States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002).  There are two issues of consent to search in this case.  The first is whether Wahl, Defendant's father gave valid consent for law enforcement to search the trailer.  The second is whether Defendant gave valid consent to search the safe located in the trailer.  Consideration of the relevant factors discussed above demonstrates that Wahl and the Defendant's consent to search was valid.

Though it was late at night and there were multiple deputies and police cars at Wahl's home, there was nothing coercive about the police procedures used to talk to Wahl about Defendant's whereabouts and whether the deputies could search Wahl's property.  Additionally, Wahl's cooperative behavior and willingness to assist indicate an absence of coercion.  None of the deputies heard any threats made to the Wahls to consent to the search.  Additionally, because there was no reason for the Wahls to believe that they would be implicated in any drug investigation, there is no reason that they would have refused the search.  Therefore this Court concludes that Wahl was not coerced into giving consent to search the property.  Wahl's consent was valid.

For the Defendant, he was not in custody when he arrived or when the deputies asked him to open the safe.  The deputies told Defendant that he was only being handcuffed for officer protection.  Defendant was also told he had the right to remain silent if he wished.  Defendant's consent to search the safe was not a product of the a show of authority nor was it the product of an illegal

detention.  Defendant's interaction with the deputies does not indicate any coercion.  Therefore this Court concludes that Defendant was not coerced into giving consent to search the safe.  Defendant's consent was valid.

Defendant also argues that the consent from Wahl was ineffective as third-party consent because Wahl was the landlord of Defendant's trailer and as such, had no authority to consent to the search.  "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."  United States v. Matlock, 415 U.S. 164, 170 (1974).  The Supreme Court has been clear in stating that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."  Id. at 171. (Citing Amos v. United States, 255 U.S. 313, 317 (1921); Frazier v. Cupp, 394 U.S. 731, 740 (1969); Coolidge v. New Hampshire, 403 U.S. 443, 487-90 (1971); Schneckloth, 412 U.S. at 245-46.)

In this case, Wahl testified that he had not communicated to the deputies that he was the landlord of the trailer in which Defendant stayed.  In fact, he gave the deputies permission to search anything they wanted on the premises.  There was nothing in the conversation with the deputies that would have led an officer

to reasonably believe that Wahl did not have common authority over the trailer. Furthermore, the deputies testified that the trailer looked more like a storage area than a residence where someone stayed on a regular basis.  The fact that the trailer was on Wahl's property and permission was given by Wahl to search it and that the Clay County deputies knew that Wahl was the owner of the trailer and the property all indicates that Wahl had a sufficient relationship to the premises that would lead a person of reasonable caution to believe that Wahl could indeed give his consent to search the trailer.  Therefore, Wahl's third-party consent was valid and Defendant's Motion to Suppress the items obtained from the trailer will be denied.

### B.      Second Motion to Suppress

The second motion to suppress addresses the seizure of Defendant's car because it was improperly taken from a location in Clay County by an Alachua County deputy sheriff, rendering the seizure in violation of state law.  Defendant claims that because the car was seized illegally, without lawful authority, the car and the evidence obtained therefrom should be suppressed.  However, though the facts are admittedly different[1], the reasoning of the Supreme Court in <u>Virginia v. Moore</u> instructs a different result.

"[T]he Fourth Amendment's meaning [does] not change with local law

---

[1]  In <u>Moore</u>, the issue was whether arresting someone in violation of state law was sufficient to justify suppression of evidence found pursuant to that arrest.  In this case, the issue is whether seizure of a car in violation of state law is sufficient to justify the suppression of evidence found pursuant to that seizure.

enforcement practices–even practices set by rule."  <u>Virginia v. Moore</u>, 128 S. Ct.
1598, 1605 (2008).  "While those practices vary from place to place and from
time to time, Fourth Amendment protections are not so variable and cannot be
made to turn upon such trivialities."  <u>Id.</u> at 1769, (internal quotations and citations
omitted). Some earlier Supreme Court decisions "excluded evidence obtained in
violation of state law, but those decisions rested on our supervisory power over
the federal courts, rather than the Constitution." <u>Id.</u>

In this case, the deputy may have violated state law by seizing the car in a
location outside of his jurisdiction.  But this violation does not change the
standard that must be met under the Fourth Amendment.  If there is probable
cause to believe that a vehicle may contain contraband or evidence of a crime,
then that vehicle may be seized and searched.  <u>United States v. Ross</u>, 456 U.S.
789 (1982).  Here, the fact that a large amount of marijuana had just been found
at Defendant's house gave the deputies probable cause to believe that the car
also contained contraband.  The fact that there may have been a violation of
state law is not a sufficient basis upon which to justify exclusion of the car or the
items found therein.

     **C.**    **Franks Challenge**

Defendant makes a <u>Franks</u> challenge to the search warrant for the
vehicle.  To prevail on his <u>Franks</u> challenge, Defendant must show two things:
first that Detective Holt intentionally or recklessly made misstatements or

omissions in the search warrant affidavit; and second that the misstatements or omissions were material to a proper determination of probable cause.  United States v. Burston, 159 F.3d 1328, 1333 (11th Cir. 1998).  Defendant has not made the second showing.

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location."  United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  When presenting his affidavit to the Alachua County judicial officer, Detective Holt intentionally omitted the fact that the car was obtained in Clay County.  He testified that the omission was irrelevant because at the time of the application for the warrant, the car was located in Alaucha County.  It is very likely, however that the Alachua County judicial officer would have expressed concern that this car was seized without a warrant, in another jurisdiction.

In any event, even if the judge had the information regarding the location of the initial seizure of the car, the seizure was still justified by probable cause.  The affidavit stated that Defendant had just been arrested at the location where the car was located.  Furthermore, the person who had helped the deputies locate the drugs also told them that the car had been used to transport drugs.  The fact that the car was originally seized in Clay County as opposed to Alachua County would not have been fatal to probable cause.  The judicial officer could

have still found that there was a high likelihood that contraband would have been found in the vehicle.  Therefore, the information omitted from the affidavit was not material to a determination of probable cause and Defendant's <u>Franks</u> challenge fails.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    The first motion to suppress the evidence found inside the home (doc. 172) is <u>*denied*</u>.

2.    The second motion to suppress the car and the evidence found therein (doc. 180) is <u>*denied*</u>.

3.    The motion in limine will be taken under advisement.

**DONE AND ORDERED** this <u>thirtieth</u> day of May, 2008.


_s/ Stephan P. Mickle_

Stephan P. Mickle
United States District Judge